UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
CHIMENE PEREZ,

                                    Plaintiff,

        - against -

NEW YORK PRESBYTERIAN/WEILL
CORNELL MEDICAL CENTER,

                                    Defendant.
--------------------------------------------------------------x

**OPINION & ORDER**

No. 23-CV-6152 (CS)

<u>Appearances</u>:

Dylan Wiley, Esq.
El-Hag & Associates P.C.
White Plains, New York
*Counsel for Plaintiff*

Michael E. Gertzman
Liza M. Velazquez
Gregory F. Laufer
Emily A. Vance
Leah J. Park
Paul, Weiss, Rifkind, Wharton & Garrison LLP
New York, New York
*Counsel for Defendant*

<u>Seibel, J.</u>

        Before the Court is the motion of Defendant New York Presbyterian/Weill

Medical Center (the "Hospital") to dismiss Plaintiff's Complaint pursuant to Federal Rules of

Civil Procedure ("FRCP") 12(b)(1) and 12(b)(6).  (ECF No. 23.)

## I.    **BACKGROUND**

        For the purposes of this motion, the Court accepts as true the facts, but not the

conclusions, alleged by Plaintiff in the Complaint, (ECF No. 1 ("Compl.").)

A.    **Facts**

From January 2016 through November 2021, Plaintiff Chimene Perez worked for the Hospital as a credentialing analyst.  (Compl. ¶¶ 9-11, 13-18.)  Her work duties included assisting with onboarding providers for the Hospital.  (*Id.* ¶ 12.)  In early 2020, she could telecommute with her manager's permission, and typically did so twice a week.  (*Id.* ¶¶ 49-50.)  After the onset of the COVID-19 pandemic, she was apparently permitted to work remotely full-time.  (*Id.* ¶ 51.)  At some point during the summer of 2021, Plaintiff submitted to the Hospital a "Request for Medical COVID-19 Immunization Exemption Form," which was completed by a physician specializing in internal medicine.  (*Id.* ¶ 26.)[1]  In support of Plaintiff's exemption, her physician wrote:

> The patient had significant side effects for flu vaccine.  She had uncontrolled rash, weakness, fatigue.  Strong family history of the adverse side effects from COVID 19 vaccine; her son had rapid heart rate, chills and admitted to infirmary.  Her sister developed rapid heart rate and skin nodules after the COVID-19 vaccine. These are severe side effects.

(*Id.* ¶ 27.)  Plaintiff alleges that these side effects, or "allergy," to the flu vaccine constitute a disability under federal and state laws because had she received the COVID-19 vaccine, "it would have imposed a physical impairment that substantially limits her ability to work, as she [would] bec[o]me weak and fatigued, and would cause a rash."  (*Id.* ¶ 35.)  She additionally alleges that her allergy is a disability because "it is also a physical impairment resulting from a[n] anatomical, physiological, or genetic component" that would prevent her from exercising normal bodily functions in that she would experience fatigue, weakness, and rashes.  (*Id.* ¶ 36.)

---

[1] It is unclear when Plaintiff submitted her initial request because the Complaint alleges two dates, roughly one month apart.  *See* Compl.  ¶ 26 (exception request submitted on July 28, 2021); *id.* ¶ 37 (exception request submitted on August 25, 2021).)

On August 26, 2021, the New York Department of Health ("DOH") issued an emergency rule (the "State Mandate") requiring "[c]overed entities," such as hospitals, to require their "personnel" to be "fully vaccinated against COVID-19, with the first dose for current personnel received by September 27, 2021 . . . ."  10 N.Y.C.R.R. § 2.61 (Aug. 26, 2021); (*see* Compl. ¶ 28 (referencing the State Mandate).)[2]  "Personnel" was defined to include "all persons employed or affiliated with a covered entity . . . including but not limited to employees . . . who engage in activities such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients or residents to the disease."  10 N.Y.C.R.R. § 2.61(a)(2) (Aug. 26, 2021).  The State Mandate permitted a "[m]edical exemption" to the vaccination requirement as follows:

> If any licensed physician or certified nurse practitioner certifies that immunization with COVID-19 vaccine is detrimental to the health of member of a covered entity's personnel, based upon a pre-existing health condition, the requirements of this section relating to COVID-19 immunization shall be inapplicable only until such immunization is found no longer to be detrimental to such personnel member's health.  The nature and duration of the medical exemption must be stated in the personnel employment medical record, or other appropriate record, and must be in accordance with generally accepted medical standards . . . ."

*Id.* § 2.61(d)(1).

Plaintiff alleges that despite having submitted a note from a doctor, the Hospital "attempted to burden" her with the "extra step" of getting an allergist to confirm that she was allergic to the COVID-19 vaccine.  (*Id.* ¶ 34.)  There is no indication that she ever provided that confirmation.  From September 1 through September 15, 2021, Plaintiff voluntarily took a leave of absence to care for her child who was sick with COVID-19.  (*Id.* ¶ 39.)  On September 14,

---

[2] The State Mandate was repealed in October 2023, *see* 10 N.Y.C.R.R. § 2.61 (Oct. 4, 2023), but this does not impact my analysis because the events at issue took place while the rule was in effect in 2021.

Plaintiff requested another leave of absence under the Family and Medical Leave Act ("FMLA") for the reason of "Employee Health." (*Id.* ¶ 40.) The Hospital's third-party vendor approved her request for leave through October 17, 2021. (*Id.*) On September 15, 2021, Plaintiff learned that her appeal from the initial denial of her medical exemption had been denied,[3] and she was informed that she needed to receive the first dose of the COVID-19 vaccine within seven days and the second dose within the prescribed timeframe. (*Id.* ¶ 38.) Plaintiff was on leave at the time and apparently never did so. (*See id.* ¶ 40.) Plaintiff requested continued FMLA leave to begin on October 18, and the Hospital's third-party vendor denied that request on or about November 12 due to lack of "sufficient medical documentation." (*Id.* ¶ 41.) The Hospital contacted Plaintiff on November 17 to tell her that the "third-party leave vendor for some reason had denied her claim due to incomplete medical documentation." (*Id.* ¶ 42.) Plaintiff responded that she was not aware of the denial and thought her physician had sent the required documentation, (*id.* ¶ 43), and the Hospital advised her to contact both the vendor to reopen the claim and her manager about "any return-to-work plans," (*id.* ¶ 44).

Around November 20, 2021 Plaintiff informed her manager that she "would like to return to work," (*id.* ¶ 45), and that she had not been, and did not intend to become, vaccinated, (*id.* ¶ 46). On November 29, 2021, the sixth business day thereafter, Plaintiff emailed her resignation to her manager. (*Id.* ¶ 47.) She alleges that she did so because she thought that the Hospital was not taking her vaccine allergy seriously, (*id.*), but what she said was: "I regret that I must resign from my position at [the Hospital]. COVID has taken a toll mentally and physically on my household, and I am no longer able to continue employment. My family requires assistance, and I must devote 100% of my time to them accordingly." (*Id.* ¶ 48.)

---

[3] The Complaint does not specify when the initial medical exemption request was denied.

### B.     Procedural History

Plaintiff commenced this lawsuit against the Hospital on July 17, 2023, (*see* ECF No. 1), asserting claims for discrimination, failure to accommodate, and retaliation under the Americans With Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* (the "ADA"), the New York Human Rights Law, N.Y. Exec. L. §§ 290-301 (the "NYSHRL"), the New York City Human Rights Law, N.Y.C. Admin. Code. §§ 8-101 to 8-131 (the "NYCHRL"), and the New York Labor Law, N.Y.L.L. § 215 (the "NYLL"), (*see* Compl. ¶¶ 52-112).  On October 3, 2023, the Hospital filed a pre-motion letter in anticipation of a motion to dismiss, (ECF No. 15), and I scheduled a pre-motion conference to be held on November 1, 2023, (ECF No. 16).  Plaintiff responded to the Hospital's letter, requesting additional time for research and for leave to file an amended complaint.  (ECF No. 17.)  I granted Plaintiff leave to amend and canceled the November 1 conference, informing Plaintiff that there would likely not be another opportunity to amend on the grounds that the Hospital raised in its pre-motion letter.  (ECF No. 18.)  On November 2, Plaintiff filed a letter stating that she would not amend the Complaint.  (ECF No. 19.)  The instant motion and accompanying briefing followed.  (ECF Nos. 23-27.)  The Hospital contends that Plaintiff fails to state a claim on which relief can be granted as to all claims.  It further contends that Plaintiff's NYSHRL and NYCHRL claims must be dismissed for lack of subject matter jurisdiction because Plaintiff brought the claims before the New York State Division of Human Rights ("NYSDHR") and thus the claims are barred by the election-of-remedies doctrine.

## II.     LEGAL STANDARD

### A.     Motion to Dismiss for Failure to State a Claim

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[4]  "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a

complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations, a plaintiff's obligation to provide the grounds of [her] entitlement to relief requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do."  *Twombly*, 550 U.S. at 555.  While FRCP 8 "marks a notable and generous

departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the

doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at

678-79.

      In considering whether a complaint states a claim upon which relief can be granted, the

court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not

entitled to the assumption of truth," and then determines whether the remaining well-pleaded

factual allegations, accepted as true, "plausibly give rise to an entitlement to relief."  *Id.* at 679.

Deciding whether a complaint states a plausible claim for relief is "a context-specific task that

requires the reviewing court to draw on its judicial experience and common sense."  *Id.*

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to

relief.'"  *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

      Because I find that Plaintiff fails to plead a federal claim upon which relief can be

granted, and thus decline to exercise supplemental jurisdiction over Plaintiff's New York state

---

[4] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

and city law claims, I need not detail the standards governing motions to dismiss for lack of subject matter jurisdiction.

## III.   **DISCUSSION**

Plaintiff alleges that her allergic reaction to the flu vaccine is a disability under the ADA, the NYSHRL, and the NYCHRL.  (*See* Compl. ¶¶ 35-36, 68, 74, 80.)  She asserts that the Hospital discriminated against her based on her disability by requiring the additional step of an allergist report to obtain a medical exemption under the State Mandate, failing to provide a reasonable accommodation, and ultimately forcing Plaintiff to quit.  (*See id.* ¶¶ 34, 54, 60, 64, 70-71, 76-77, 82-83, 87-90, 94-97, 101-04, 109-11.)  She further alleges that the "extra step" and failure to accommodate violated the anti-retaliation provisions of the ADA, NYSHRL, NYCHRL, and NYLL.  (*See id.* ¶¶ 85-112.)  The Hospital argues that Plaintiff fails to state a claim under federal, state or city law because (1) she has not plausibly alleged that she has a "disability" within the meaning of those laws, (ECF No. 24 ("D's Mem.") at 12-13; ECF No. 27 ("D's Reply") at 4-5); (2) she has not plausibly alleged that she suffered an adverse employment action, (D's Mem. at 13-15; D's Reply at 5-6); (3) the Hospital was not required to provide any medical exemption or remote-work accommodation, as either would constitute an undue hardship, (D's Mem. at 16-19; D's Reply at 7-8); (4) Plaintiff caused the breakdown of the interactive process relating to a reasonable accommodation, (D's Mem. at 19-20; D's Reply at 6-7); (5) she fails to plausibly allege that any adverse employment action was taken because of her purported disability, (D's Mem. at 20; D's Reply at 9); and (6) she has not plausibly alleged, in connection with her retaliation claims, either a protected activity or any adverse employment action connected to such activity, (D's Mem. at 21-22; D's Reply at 10).  (*See* D's Mem. at 11; D's Reply at 2-3.)

A.     **Plaintiff Fails to State a Claim Under the ADA**

1.     **ADA Discrimination Claim**

"A plaintiff claiming disability discrimination under the ADA must plausibly allege that: (1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA or perceived to be so by her employer; (3) she was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) she suffered an adverse employment action; and (5) the adverse action was imposed because of her disability." *Librandi v. Alexion Pharms., Inc.*, No. 22-CV-1126, 2023 WL 3993741, at *4 (D. Conn. June 14, 2023); *see Dooley v. JetBlue Airways Corp.*, 636 F. App'x 16, 21 (2d Cir. 2015) (summary order) (to same effect); *Pierre v. N.Y.C. Fire Dep't*, No. 22-CV-7425, 2024 WL 360662, at *3 (E.D.N.Y. Jan. 31, 2024) (to same effect, citing *McMillan v. City of N.Y.*, 711 F.3d 120, 125 (2d Cir. 2013)); *Verne v. N.Y.C. Dep't of Educ.*, No. 21-CV-5427, 2022 WL 4626533, at *11 (S.D.N.Y. Sept. 30, 2022) (to same effect).  At this stage, a plaintiff need not allege specific facts that establish a *prima facie* case, *see Pierre*, 2024 WL 360662, at *3 (citing *Vega v. Hempstead Union Sch. Dist.*, 801 F.3d 72, 86-87 (2d Cir. 2015)); *Laface v. E. Suffolk Boces*, 349 F. Supp. 3d 126, 145 (E.D.N.Y. 2018), but must allege facts that "plausibly support that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent," *Pierre*, 2024 WL 360662, at *3.

a.     Disability

The ADA defines "disability" as:  "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such impairment (as described in paragraph (3))."  42 U.S.C. §

12102(1).  Courts must construe this definition broadly, in favor of coverage under the statute.
*See Dooley*, 636 F. App'x at 21 (citing 42 U.S.C. § 12102(4)(A)).  "To establish a disability
under prong (A), a plaintiff must:  (1) 'show that she suffers from a physical or mental
impairment'; (2) 'identify the activity claimed to be impaired and establish that it constitutes a
major life activity'; and (3) 'show that her impairment substantially limits the major life activity
previously identified.'"  *Innes v. Cnty. of Warren*, No. 22-CV-641, 2024 WL 865864, at *6
(N.D.N.Y. Feb. 29, 2024) (quoting *Norman v. NYU Langone Health Sys.*, 492 F. Supp. 3d 154,
163 (S.D.N.Y. 2020), *aff'd*, No. 20-3624, 2021 WL 5986999 (2d Cir. Dec. 17, 2021)).[5]  Courts
accord deference to the Equal Employment Opportunity Commission ("EEOC") regulations that
implement the ADA.  *See Laface*, 349 F. Supp. 3d at 146; *Norman*, 492 F. Supp. 3d at 163.  The
EEOC defines "physical or mental impairment" as:

> (1) [a]ny physiological disorder or condition, cosmetic disfigurement, or
> anatomical loss affecting one or more body systems, such as neurological,
> musculoskeletal, special sense organs, respiratory (including speech organs),
> cardiovascular, reproductive, digestive, genitourinary, immune, circulatory,
> hemic, lymphatic, skin, and endocrine; or
>
> (2) [a]ny mental or psychological disorder, such as an intellectual
> disability . . . organic brain syndrome, emotional or mental illness, and specific
> learning disabilities.

29 C.F.R. § 1630.2(h).  Major life activities include "working" as well as "the operation of a
major bodily function."  42 U.S.C. § 12102(2).

To constitute a disability under the ADA, an impairment must "'substantially limit[] the
ability of an individual to perform a major life activity as compared to most people in the general
population . . . .'"  *Innes*, 2024 WL 865864, at *7 (quoting 29 C.F.R. § 1630.2(j)(1)(ii)).  But

---

[5] Plaintiff does not allege that she meets the definition of disability under prongs (B) and
(C), and I thus address only prong (A).

"[a]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting."  29 C.F.R. § 1630.2(j)(1)(ii).  Indeed, an impairment that is only episodic can still constitute a disability under the ADA if it "substantially limit[s] a major life activity when active."  42 U.S.C. § 12102(4)(D). This is not a demanding standard, and I construe the term "substantially limits" broadly, in favor of coverage under the ADA.  *See* 29 C.F.R. § 1630.2(j)(1)(i); *Innes*, 2024 WL 865684, at *7.

At the same time, not every impairment constitutes a disability under the ADA.  *See Thomson v. Odyssey House*, No. 14-CV-3857, 2015 WL 5561209, at *17 (E.D.N.Y. Sept. 21, 2015) (citing 29 C.F.R. § 1630.2(j)(1)(ii)), *aff'd*, 652 F. App'x 44 (2d Cir. 2016) (summary order).  "[P]laintiff's allegations must contain sufficient factual support for his or her purported limitations, such as describing in some detail the frequency, duration, or severity of his or her limitations."  *Earl v. Good Samaritan Hosp. of Suffern N.Y.*, 625 F. Supp. 3d 292, 304 (S.D.N.Y. 2022); *see* 29 C.F.R. § 1630.2(j)(4) (factors to consider include the "condition, manner, or duration" of the performance of the affected major life activity); *Norman*, 492 F. Supp. 3d at 163 (noting that "duration of an impairment" is relevant factor).  "Allegations that merely track the language of the statute or vague, conclusory assertions without details on how a plaintiff's condition actually affects a major life activity are insufficient to survive a motion to dismiss." *Baluch v. 300 West 22 Realty, LLC*, No. 21-CV-9747, 2023 WL 112547, at *5 (S.D.N.Y. Jan. 5, 2023).

Plaintiff argues that she has adequately pleaded a disability under the ADA because (1) she experienced a physical impairment as described in her medical exemption request, (2) "work" is a major life activity, and (3) her vaccine allergy – consisting of the "severe side effects" of "rash, weakness, and fatigue" – would substantially limit her ability to work.  (*See*

ECF No. 26 ("P's Opp.") at 13-14.)[6]  The Hospital argues that Plaintiff failed to plead that her asserted conditions amount to a physical or mental impairment that constitutes a disability under the ADA.  (D's Mem. at 12-13; D's Reply at 4-5.)

Plaintiff has failed to plausibly allege that her reactions to the flu shot and her family history of reactions to the COVID-19 vaccine substantially limit her ability to work, and thus, those reactions are not a qualifying disability under the statute.[7]  The Complaint contains no allegations about the frequency, severity or duration of Plaintiff's allergic reaction, nor does it demonstrate how the allergy impacts, let alone substantially impairs, her ability to work. "[M]erely alleging that a major life activity is affected by an identified impairment is not sufficient."  *Davis v. New York*, No. 23-CV-116, 2023 WL 10351576, at *4 (W.D.N.Y. Dec. 20, 2023) (allegations that did not "indicate how often the symptoms occur, or how long they last when they do occur," were not sufficient to plead substantial limitation), *report and recommendation adopted*, 2024 WL 1016211 (W.D.N.Y. Mar. 8, 2024); *Earl*, 625 F. Supp. 3d at

---

[6] Plaintiff's brief lacks internal pagination, so all citations to it use the page numbers set by the Court's Electronic Case Filing ("ECF") system.

[7] Courts in this Circuit have recognized that certain allergic reactions may constitute "impairments" under the ADA.  *See Innes*, 2024 WL 865864, at *7 (factual allegations about allergic reaction consisting of "severe rashes, reddened skin, swelling of the face and lips, itchy eyes and ears, difficulty swallowing, some wheezing, and occasional breathing difficulties" sufficient to allege physical impairment); *Norman*, 492 F. Supp. 3d at 163-64 (assuming that allergic reaction to flu vaccine – shortness of breath, chest palpitations, anxiety, and stress – constituted impairment); *Bonnen v. Coney Island Hosp.*, No. 16-CV-4258, 2017 WL 4325703, at *7 (E.D.N.Y. Sept. 6, 2017) (allergy that caused plaintiff's "skin to develop red, patchy rashes and hives on her chest, neck, face, arms, and hands, causing an intense itching, a feeling of being overheated, flushing, a burning sensation, anxiety, and stress" constituted physical impairment); *see also Keck v. N.Y.S. Off. of Alcoholism & Substance Abuse Servs.*, 10 F. Supp. 2d 194, 200 (N.D.N.Y. 1998) (plaintiff's sensitivity to perfume raised question of fact as to whether sensitivity was disability).  Because Plaintiff fails to plead facts plausibly showing that her allergic reaction to the flu vaccine and family history of reactions to the COVID-19 vaccine substantially limited a major life activity, I need not and do not express an opinion on whether these reactions would be considered physical impairments under the ADA.

305-06 (insufficient allegations did not describe or detail the "frequency, duration, or severity of [plaintiff's] alleged impairments" or "how they affected [her] *at the time of [her] employment at the Hospital*") (emphasis in original).  Her allegations that receiving the COVID-19 vaccine would have made her "weak and fatigued, and would [have] caus[ed] a rash," (*see* Compl. ¶¶ 35-36), are "devoid of factual detail" that would plausibly support an inference that that impact would have substantially limited her ability to work or exercise normal bodily functions, *see Innes*, 2024 WL 865864, at *9.

Many individuals experience a temporary reaction to a vaccine that might require a short period of rest, *see Vargas v. St. Luke's-Roosevelt Hosp. Ctr.*, No. 16-CV-5733, 2020 WL 2836824, at *6 (S.D.N.Y. June 1, 2020) ("[A] short-term impairment, absent long-term impact, is insufficient to qualify as substantially limiting a major life activity, as required to qualify as a disability under the ADA."); *Shaughnessy v. Xerox Corp.*, No. 12-CV-6158, 2015 WL 1431687, at *3 (W.D.N.Y. Mar. 27, 2015) ("It is well-settled that a temporary, non-severe injury does not constitute a disability under the ADA because such an injury does not substantially impair the person suffering the injury."), but the Complaint contains no basis on which to conclude that Plaintiff's reaction would have been so long-lasting or severe as to substantially limit her ability to work, *see Jacobs v. Mercy Health*, No. 22-CV-1204, 2024 WL 894861, at *9 (E.D. Mo. Mar. 1, 2024) (finding on summary judgment that temporary reaction to vaccine did not amount to disability) (collecting cases); *Innes*, 2024 WL 865864, at *9 (allegations of "occasional breathing difficulties that require medical treatment if prolonged" and "some wheezing" were insufficient to indicate how allergic reaction substantially limited plaintiff's ability to breathe); *Sayers v. Niagara Falls City Sch. Dist.*, No. 20-CV-703, 2022 WL 682640, at *5 (W.D.N.Y. Mar. 8, 2022) ("[Plaintiff] has pleaded only that she . . . has PTSD.  She does not say – or include any facts

from which the Court can infer – that her PTSD substantially limited her ability to perform any major life activities.  [Plaintiff] therefore has not pleaded that she has a disability within the meaning of the ADA."); *Norman*, 492 F. Supp. 3d at 163 (assuming on summary judgment that "[p]laintiff's allergy to the flu vaccine constitutes an impairment that limits the major life activity of breathing," but holding that "she has nevertheless failed to show that this impairment substantially limited her breathing at the time she sought an accommodation, and as such, it cannot be said that Plaintiff had a qualifying disability that Defendant failed to accommodate.").

Simply put, Plaintiff's allegations are conclusory and insufficient to support her ADA disability claim at the pleading stage.  *See Innes*, 2024 WL 865864, at *9 ("[D]espite the required broad construction of the term 'substantially limits,' it is still required that a plaintiff raise a right to relief above the speculative level and nudge claims across the line from conceivable to plausible."); *Johnson v. Mount Sinai Hosp. Grp., Inc.*, No. 22-CV-2936, 2023 WL 2163774, at *5 (E.D.N.Y. Feb. 22, 2023) ("Vague, conclusory assertions without details on how [plaintiff's] condition actually affects a major life activity are insufficient."); *Baluch*, 2023 WL 112547, at *5 ("[Plaintiff] has failed to allege any facts whatsoever about which of [her] major life activities have been substantially limited by [her] impairments.") (collecting cases); *cf. Dooley*, 636 F. App'x at 21-22 (allegations that plaintiff's bone fractures and nerve damage limited her ability to lift and make repetitive movements at work, and caused plaintiff to take time off to receive medical treatment, plausibly alleged disability); *Bonnen*, 2017 WL 4325703, at *8 (allegations detailing plaintiff's allergy to disposable lab coats required for her job that resulted in intensely itchy hives and burning sensations across her body sufficiently pleaded disability).

13

Because Plaintiff has not established that she is a person with a disability under the ADA, she cannot seek redress under the statute and her claim for ADA discrimination must be dismissed.  *See Davie v. N.Y.C. Transit Auth.*, No. 02-CV-4231, 2003 WL 22998905, at *2 (E.D.N.Y. Dec. 17, 2003) ("In the absence of factual allegations showing that [Plaintiff] is disabled within the meaning of the ADA, the Court cannot sustain [Plaintiff's] claim without improperly assuming facts that are not alleged.").

b.    <u>Adverse Employment Action</u>

Even if Plaintiff had plausibly alleged that she is a person with a disability, her ADA discrimination claim would still fail because she has not pleaded that the Hospital took any adverse employment action against her because of her disability.  An adverse employment action is defined "as a materially adverse change in the terms and conditions of employment."  *Caskey v. Cnty. of Ontario*, 560 F. App'x 57, 58 (2d Cir. 2014) (summary order); *see Nazon v. Time Equities, Inc.*, No. 21-CV-8680, 2022 WL 18959570, at *12 (S.D.N.Y. Nov. 22, 2022) (to same effect), *report and recommendation adopted*, 2023 WL 1516905 (S.D.N.Y. Feb. 3, 2023). Typical examples include "termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation."  *Caskey*, 560 F. App'x at 59.  An adverse employment action may also take the form of a constructive discharge where an "employer, rather than acting directly, deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation."  *Id.*; *see Nazon*, 2022 WL 18959570, at *15 (to same effect).

The Hospital argues that Plaintiff did not experience any adverse employment action because Plaintiff concedes that she took multiple voluntary leaves of absence through FMLA and

14

then voluntarily resigned to take care of her family.  (D's Mem. at 13-15; D's Reply at 5-6.)  The Hospital further contends that Plaintiff fails to plausibly allege that she was constructively discharged.  (D's Mem. at 14-15; D's Reply at 5-6.)  Plaintiff argues that the Hospital "attempted to force Plaintiff to get documentation from an allergist" to receive a medical exemption and intended to create an intolerable environment, amounting to constructive discharge, by forcing her "to either take a vaccine that could have a devastating impact on her health or quit her job." (P's Opp. at 15.)  Furthermore, Plaintiff asserts – without further elaboration – that the Hospital takes the words of her resignation email out of context.  (*Id.* at 15-16.)

Plaintiff has failed to allege that the Hospital took an adverse employment action or constructively discharged her.  The Complaint alleges that the following actions taken by the Hospital in connection with Plaintiff's request for a medical exemption amount to adverse action:  it asked for documentation from an allergist that Plaintiff was allergic to the COVID-19 vaccine, and apparently thereafter denied her exemption request, (Compl. ¶ 34; *see id.* ¶ 38); it denied her appeal of the initial denial of the request on September 15, 2021, (*id.* ¶ 38); it contacted Plaintiff to inform her that the third-party leave vendor denied her second request for FMLA leave because Plaintiff had incomplete medical documentation, (*id.* ¶ 42); and it advised Plaintiff to contact the third-party vendor to reopen her FMLA claim and to inform her manager of any return to work plans, (*id.* ¶ 44).

None of those actions constitute "materially adverse change[s] in the terms and conditions of [Plaintiff's] employment."  *Caskey*, 560 F. App'x at 58.  The Hospital did not fire or demote Plaintiff, nor did it even threaten to do so.  Its request that Plaintiff "inform her manager of any return-to-work plans," (Compl. ¶ 44), neither explicitly states nor implies that the Hospital contemplated any adverse actions at that time.  *See Caskey*, 560 F. App'x at 59

("The complaint, however, is bereft of any factual allegations to render those assertions plausible, because none of the incidents constitutes a materially adverse change in the terms and conditions of her employment.").  The Hospital permitted Plaintiff to take leave for the entire period during which she otherwise would have had to be vaccinated, and its proactive contact with Plaintiff about her denied FMLA continuation and its subsequent encouragement to reopen the claim appear to be helpful – rather than adverse – actions.  (*See* Compl. ¶¶ 42, 44.)  There are simply no facts provided by Plaintiff suggesting that she would have been required to return to work or fired if she did not.  Further, the Hospital plainly would have considered an exemption had Plaintiff provided the requested allergist report.

There was nothing unreasonable about the request for that report, let alone anything so burdensome as to amount to an adverse action or so intolerable as to amount to a constructive discharge.  The medical exemption was "narrowly framed."  *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 281 (2d Cir. 2021).  The State Mandate required that the employer's determination whether to provide a medical exemption "be in accordance with generally accepted medical standards."  10 N.Y.C.R.R. § 2.61(d)(1) (Aug. 26, 2021).  Plaintiff points to no authority suggesting an employer cannot request additional information if what has been provided is not sufficient for it to make an informed decision.[8]  Her argument that the Hospital created an intolerable work environment "by [its] blatant disregard for the requirements of the [State Mandate] and the related guidance" – including the DOH guidance that "[a]n allergy to a

---

[8] Plaintiff's internist's note may have implied that Plaintiff would have a reaction to the COVID-19 vaccine, but it did not "certif[y]," that that immunization would be "detrimental to [her] health."  10 N.Y.C.R.R. § 2.61(d)(1) (Aug. 26, 2021).  An allergist would be well positioned to opine on whether a reaction to the flu shot and relatives who reacted to the COVID-19 shot provided a sufficient basis to conclude that the latter would be detrimental to Plaintiff's health.

vaccine (other than COVID) is explicitly stated as a precaution to receiving the COVID-19

vaccine," (P's Opp. at 15) – is not persuasive.  Plaintiff is correct that the DOH guidance

recognized as a precaution to COVID-19 vaccination a "[h]istory of an immediate allergic

reaction to any other (not COVID-19) vaccine or injectable therapy (excluding allergy shots)."

(*See* ECF No. 25-6 at 5.)[9]  But that same guidance defined an "immediate allergic reaction" as

"any hypersensitivity-related signs or symptoms such as urticaria [(*i.e.*, hives)], angioedema

[(*i.e.*, swelling of deep layers of skin)], respiratory distress (e.g., wheezing, stridor), or

anaphylaxis that occur within four hours following administration."  (*Id.* at 4-5.)  Plaintiff's

doctor's note did not describe Plaintiff experiencing any of those reactions when receiving the

flu shot (or experiencing any reactions at all within four hours of administration).  (*See* Compl. ¶

27.)  Thus, without more, the Hospital could not have concluded that Plaintiff's "uncontrolled

rash, weakness, fatigue" following the flu shot, (*id.* ¶ 27), would have been considered a

precaution to COVID-19 vaccination under DOH guidance, and it could not have granted her an

exemption "in accordance with generally accepted medical standards," (ECF No. 25-6 at 4); *see*

10 N.Y.C.R.R. § 2.61(d)(1) (Aug. 26, 2021).  In that situation, seeking a more detailed report

from a specialist was a completely appropriate step.  And even if there were no basis for

---

[9] "Courts ordinarily may not consider material outside the complaint on a motion to dismiss."  *170 Mercer LLC v. Rialto Cap. Advisors, LLC*, No. 20-CV-2496, 2021 WL 1163649, at *2 (S.D.N.Y. Mar. 25, 2021).  But "the Court may consider documents incorporated into the complaint by reference and those that are integral to the complaint."  *Id.*  In connection with its motion to dismiss, the Hospital submitted guidance published by the DOH regarding the State Mandate.  (*See* ECF No. 25-6.)  Plaintiff referred to and relied on this guidance in her Complaint.  (*See* Compl. ¶¶ 29-30, 33.)  Accordingly, I may consider the guidance in resolving the instant motion.  *See Moore v. Montefiore Med. Ctr.*, No. 22-CV-10242, 2023 WL 7280476, at *1 n.1 (S.D.N.Y. Nov. 3, 2023) ("[T]he Court considers documents in the record that are integral or incorporated by reference by the complaint.").

requiring an allergist note, that one-time "extra step" falls woefully short of the material changes in terms and conditions of employment that amount to adverse action.

Nor do any of Plaintiff's other allegations plausibly support the claim that her working conditions were "so intolerable that a reasonable person would have felt compelled to resign," as required for a constructive discharge. *Kelly v. N. Shore–Long Island Jewish Health Sys.*, 166 F. Supp. 3d 274, 288 (E.D.N.Y. 2016). To the contrary, those allegations undermine any such claim. Plaintiff was permitted to take two voluntary leaves of absence, (*see* Compl. ¶¶ 39-40), and when the Hospital appeared unsure why the third-party vendor denied her third request, (*see id.* ¶ 42 ("[The Hospital] contacted [Plaintiff] to advise her that [the Hospital's] third-party leave vendor *for some reason* had denied her claim due to incomplete medical documentation") (emphasis added)), it advised her "to contact the vendor to reopen her claim," (*id.* ¶ 44). Plaintiff voluntarily resigned to care for her family only twelve days later and about a week after she indicated that she wanted to return to work, before the Hospital took any further action. (*See id.* ¶¶ 45, 47-48). These allegations are not sufficient to allege that Plaintiff's working conditions "were so difficult or unpleasant that a reasonable person would have felt compelled to resign." *Nazon*, 2022 WL 18959570, at *15. Plaintiff was never ordered back to work or otherwise put to the choice of getting vaccinated or getting fired. To the contrary, the Hospital seems to have tolerated her absence from work from the expiration of her leave on October 17, 2021 through her resignation on November 29, 2021 without imposing any adverse consequences. (*See* Compl. ¶¶ 40-47.) Even if Plaintiff feared that she might in the future have to choose between vaccination and work, her decision to resign because her personal situation had become untenable hardly constitutes the Hospital making her working conditions intolerable. *Cf. Spence v. Md. Cas. Co.*, 995 F.2d 1147, 1156 (2d Cir. 1993) ("[T]he fact that an employee develops

stress-related ill health from the demands of [her] voluntarily undertaken position . . . and as a result determines that health considerations mandate [her] resignation, does not normally amount to a constructive discharge by the employer."); *Antrobus v. N.Y.C. Health & Hosps. Corp.*, No. 19-CV-7449, 2021 WL 964438, at *16 (S.D.N.Y. Mar. 15, 2021) ("[W]hile Plaintiff alleges that she became physically and emotionally ill from her treatment by Defendant, such that she ultimately resigned, she has not established that her ill health resulted from deliberately created working conditions that were so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign."), *aff'd*, No. 21-891, 2023 WL 6784414 (2d Cir. Oct. 13, 2023).

Thus, Plaintiff's ADA discrimination claim must also be dismissed because Plaintiff does not plausibly allege an adverse employment action or constructive discharge.

### 2.     ADA Failure to Accommodate Claim

"To allege a violation of the ADA for failure to provide a reasonable accommodation, a plaintiff must allege that (1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of [her] disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Thomson*, 652 F. App'x at 46; *see Dooley*, 636 F. App'x at 18 (to same effect). "[P]laintiff must plead sufficient facts to raise the inference that the failure to accommodate was motivated by discriminatory intent." *Verne*, 2022 WL 4626533, at *15. "The ADA envisions an 'interactive process' by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated." *Noll v. Int'l Bus. Machines Corp.*, 787 F.3d 89, 98 (2d Cir. 2015). "The employee possesses the initial responsibility to inform the employer that [she] needs an

accommodation and to identify the limitation that needs accommodating." *Conway v. Healthfirst Inc.*, No. 21-CV-6512, 2022 WL 4813498, at *5 (S.D.N.Y. Sept. 30, 2022).  Once the process is triggered, "the employer must make a reasonable effort to determine an appropriate accommodation based on the particular job involved and consultation with the employee . . . ." *Grimes v. New York & Presbyterian Hosp.*, No. 23-CV-652, 2024 WL 816208, at *7 (S.D.N.Y. Feb. 26, 2024); *see Conway*, 2022 WL 4813498, at *5 (to same effect).  "'An employee who is responsible for the breakdown of the interactive process may not recover for a failure to accommodate.'"  *Conway*, 2022 WL 4813498, at *5 (quoting *Nugent v. St. Lukes-Roosevelt Hosp. Ctr.¸* 303 F. App'x 943, 946 (2d Cir. 2008)).

Because Plaintiff has failed to allege that she is a person with a disability within the meaning of the ADA, she does not satisfy the requirements for a failure to accommodate claim, and the claim must be dismissed.  *See Patel v. NYU Langone Hosps.*, No. 20-112, 2021 WL 4852426, at *3 (2d Cir. Oct. 19, 2021) (summary order); *Conway,* 2022 WL 4813498, at *6.

Even if Plaintiff had plausibly pleaded that she suffers from a disability under the ADA, her failure to accommodate claim would still fail.  Plaintiff does not specify any accommodation she requested apart from the medical exemption, and it is clear that she is responsible for the breakdown of the interactive process with respect to that accommodation.  As noted above, the request for an allergist report was reasonable.  Plaintiff does not allege that she ever responded, despite that fact that that documentation could have played a part in determining whether she qualified for a medical exemption or needed an accommodation at all, and then went out on leave continuously until her resignation.  *See Boughton v. Town of Bethlehem*, No. 13-CV-1583, 2015 WL 5306077, at *10 (N.D.N.Y. Sept. 10, 2015) (employer "entitled to request that Plaintiff provide more specific details concerning [her] restrictions and the appropriate accommodations

for [her] alleged disability"); *Peters v. Sikorsky Aircraft Corp.*, No. 04- CV-1066, 2006 WL

2331077, at *11 & n.15 (D. Conn. Aug. 10, 2006) (appropriate for employer to request employee

to see hand specialist as part of interactive process required by ADA).

The Complaint is silent as to any other actions taken or communications made by

Plaintiff regarding a reasonable accommodation.  She does not even contend that she engaged in

the interactive process by protesting the request for an allergist's note.  She contends that she

should have received the accommodation of working remotely, (Compl. ¶¶ 70-71), but she

nowhere alleges that this accommodation was refused.  To the contrary, she states she was

permitted to work remotely once the pandemic started, (*id.* ¶ 51), and never alleges that that

permission was withdrawn or that she was otherwise ordered to work in person.  Indeed, there

would have been no occasion to even discuss the matter, as Plaintiff was out on leave.  Once she

indicated on November 20, 2021, that she wanted to return to work, she quit after about a week

went by.  (*Id.* ¶¶ 45-47.)  The Hospital's silence during that week is too short to plausibly infer a

refusal to accommodate, especially when it was undoubtedly dealing with numerous personnel

issues arising from the pandemic and the State Mandate, and it had up until then reasonably

believed Plaintiff was still pursuing additional leave.  *See Logan v. Matveevskii*, 175 F. Supp. 3d

209, 228-29 (S.D.N.Y. 2016) (no constructive denial of reasonable accommodation from four-

month delay in responding to request absent "basis to conclude the delay was caused by

unreasonableness, unwillingness to grant the requested accommodation, or bad faith"); *cf. Logan*

*v. Matveevskii*, 57 F. Supp. 3d 234, 271 (S.D.N.Y. 2014) ("[C]ourts have found plaintiffs'

requests for reasonable accommodations to have been constructively denied after delays

approximating four months" and "while courts have held that an unreasonable delay itself might

be evidence of discriminatory intent," they "have also considered whether the delay was caused

by the defendant's unreasonableness, unwillingness to grant the requested accommodation, or bad faith, as opposed to mere bureaucratic incompetence or other comparatively benign reasons."). Plaintiff provides no basis on which to infer that a week's delay, in the middle of a pandemic, evidenced any reluctance to engage. She resigned before allowing a reasonable period for the Hospital to respond to her notification that she wished to resume work, thereby short-circuiting any interactive process that might have been necessary.

Because Plaintiff does not plausibly allege a disability, and because the allegations in the Complaint indicate that Plaintiff was responsible for the breakdown of the interactive process, she may not recover on a failure to accommodate claim, *see Conway*, 2022 WL 4813498, at *5, and that claim must be dismissed.

### 3.    ADA Retaliation Claim

"[T]o state a claim for retaliation under the ADA, a plaintiff must allege that: (1) she engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took an adverse employment action against her; and (4) a causal connection exists between the alleged adverse action and the protected activity." *Caskey*, 560 F. App'x at 58; *see Nazon*, 2022 WL 18959570, at *17 (to same effect). In the context of a retaliation claim, an adverse employment action is one that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *See Vega*, 801 F.3d at 90. Compared to a discrimination claim, this definition is broader and "is not limited to discriminatory actions that affect the terms and conditions of employment." *Id.*

Plaintiff has not alleged any adverse action, let alone that any such action was intended to retaliate for protected activity. She argues that her protected activity of requesting the accommodation of a medical exemption resulted in the adverse action of the denial of the request

and her constructive discharge.  (P's Opp. at 18-19.)  As discussed above, there was no constructive discharge, and "an employer's mere failure to make an accommodation subsequent to an employee's request simply gives rise to a failure to accommodate claim and 'cannot be bootstrapped into a viable disability retaliation claim.'"  *Robles v. Medisys Health Network, Inc.*, No. 19-CV-6551, 2020 WL 3403191, at *11 (E.D.N.Y. June 19, 2020) (quoting *Missick v. City of N.Y.*, 707 F. Supp. 2d 336, 356 (E.D.N.Y. 2010)); *see Montague v. National Grid USA*, No. 17-CV-3S, 2020 WL 6833418, at *19 (W.D.N.Y. Nov. 20, 2020) ("The failure to accommodate cannot be bootstrapped into a[n ADA] retaliation claim."); *Kalejaiye v. Quality Investigations, Inc.*, No. 19-CV-2647, 2024 WL 1213322, at *13 n.9 (D.D.C. Mar. 21, 2024) ("[T]he denial of an accommodation request does not amount to an adverse employment action because if the denial of a request for accommodation could itself support a claim of retaliation based on the request, then every failure-to-accommodate claim would be doubled.").  Not only has Plaintiff not identified any respect in which the Hospital retaliated against her, *see Caskey*, 560 F. App'x at 59 (no plausible claim for ADA retaliation where no actual or constructive discharge, and only possible adverse employment action was inartful allegation that employer denied request for leave related to disability yet plaintiff conceded that she received all requested leave); *Newell v. State Univ. of N.Y. Westchester Cmty. Coll*, No. 22-CV-8524, 2023 WL 4082030, at *4 (S.D.N.Y. June 20, 2023) ("Plaintiff has failed to allege a *prima facie* retaliation claim because she does not allege any adverse decision or course of action taken by [defendant] against her."), but if anything it appears that the Hospital, after being aware of her protected activity, not only took no steps to endanger her job but also allowed and encouraged her requested leaves, (*see, e.g.*, Compl. ¶¶ 39-44).  Thus, Plaintiff's ADA retaliation claim must be dismissed.

**B.**   <u>**Supplemental Jurisdiction Over the State and City Claims**</u>

"District courts may decline to exercise supplemental jurisdiction over a claim if 'the

district court has dismissed all claims over which it has original jurisdiction.'"  *Stanley v. City*

*Univ. of N.Y.*, No. 18-CV-4844, 2023 WL 2714181, at * 23 (S.D.N.Y. Mar. 30, 2023) (quoting

28 U.S.C. § 1367(c)(3)); *see id.* (collecting cases).  Because "the law of New York in regard to

relative state and federal disability claim analysis is still developing," *Norman*, 492 F. Supp. 3d

at 168, "the Second Circuit has recommended that where there is an absence of any continuing

basis for federal question jurisdiction under the ADA, the appropriate analytic framework to be

applied to discrimination claims based on a disability as defined by New York state and

municipal law is a question best left to the courts of the State of New York," *Stanley*, 2023 WL

2714181, at *24 (declining to exercise supplemental jurisdiction over state law claims).

As I have dismissed all of Plaintiff's ADA claims – the only federal claims in her

Complaint – I decline to exercise supplemental jurisdiction over Plaintiff's remaining NYSHRL,

NYCHRL, and NYLL claims, and dismiss those claims without prejudice.  *See Antrobus*, 2021

WL 964438 at *16 (declining supplemental jurisdiction over NYSHRL and NYCHRL claims

after dismissing all of plaintiff's federal claims); *Shine v. N.Y.C. Hous. Auth.*, No. 19-CV-4347,

2020 WL 5604048, at *9 (S.D.N.Y. Sept. 18, 2020) (declining supplemental jurisdiction over

state tort claims after dismissing plaintiff's ADA and Rehabilitation Act claims).

**C.**   <u>**Leave to Amend**</u>

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R.

Civ. P. 15(a)(2).  "[I]t is within the sound discretion of the district court to grant or deny leave to

amend."  *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018).  "Leave to amend, though liberally

granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments

previously allowed'" or "'futility of amendment,'" among other reasons.  *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Here, Plaintiff requested and was offered the opportunity to amend, after having the benefit of Defendant's pre-motion letter outlining the grounds for its motion, and thereafter decided not to do so.  (*See* ECF Nos. 15, 17-19.)  Generally, the failure to fix deficiencies in an initial pleading, after being provided notice of those deficiencies, is alone sufficient ground to deny leave to amend.  *See Williams v. Time Warner Inc.*, No. 09-CV-2962, 2010 WL 846970, at *7-8 (S.D.N.Y. Mar. 3, 2010) (leave to amend properly denied where plaintiff declines to amend after being advised of arguments for dismissal and complaint's deficiencies), *aff'd,* 440 F. App'x 7 (2d Cir. 2011); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (*per curiam*) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.").

Further, Plaintiff has not asked to amend or otherwise suggested that she is in possession of facts that would cure the deficiencies identified in this opinion.  *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (deciding that the plaintiff need not be given leave to amend if she fails to specify how amendment would cure the pleading deficiencies in her complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (finding that district court did

not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004) (*per curiam*) (district court did not abuse its discretion by not granting leave to amend where there was no indication as to what might have been added to make complaint viable and plaintiffs did not request leave to amend).

Accordingly, the Court declines to grant leave to amend *sua sponte*.

## IV.    <u>CONCLUSION</u>

For the reasons stated above, Defendant's motion to dismiss is GRANTED.  Plaintiff's ADA claims are dismissed with prejudice.  Plaintiff's NYSHRL, NYCHRL, and NYLL claims are dismissed without prejudice.  The Clerk of Court is respectfully directed to terminate the pending motion, (ECF No. 23), and close the case.

**SO ORDERED.**

Dated: April 8, 2024
      White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.